IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **LAKEN SAWYERS,** individually and on behalf of all other similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**BETTER FUTURE PROPERTY LLC**, a North Carolina company,<br><br>*Defendant.* | Case No. 3:25-cv-992<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Laken Sawyers ("Plaintiff Sawyers" or "Sawyers") brings this Class Action Complaint and Demand for Jury Trial against Defendant Better Future Property LLC ("Defendant" or "Better Future Property") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") and the North Carolina Telephone Solicitations Act ("NCTSA") by sending unsolicited text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Sawyers, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Sawyers is a resident of Mount Airy, North Carolina.

2. Defendant Better Future Property is a California registered company located in Charlotte, North Carolina. Defendant Better Future Property conducts business throughout this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court has supplemental jurisdiction over the NCTSA claim because it arises from the same conduct as the TCPA claim.

4. This Court has personal jurisdiction over the Defendant because the Defendant is located in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Defendant is located in this District and directed its wrongful conduct from here.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term this year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 4.2 billion robocalls were placed in August 2025 alone, at a rate of 133.9 million per day. www.robocallindex.com (last visited September 28, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

## COMMON ALLEGATIONS

14. Defendant Better Future Property purchases vacant land throughout the country from land owners and consumers.[3]

15. Defendant Better Future Property sends text messages to solicit its land purchasing services.

16. Defendant Better Future Property sends telemarketing text messages to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls
[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf
[3] https://betterfutureproperty.com/

17. Sage Burmeister is the President of Better Future Property:



[4]

18. Burmeister is directly involved in sending text messages to consumers to solicit the land buying services of Better Future Property.

19. In a YouTube video featuring Burmeister and Morgan Mancuso, the VP of Better Future Property, Burmeister is shown sending out text messages to which Mancuso says, “Texting anywhere.” Burmeister replies back, “Got to stay consistent.” Mancuso answers, “Got to get it in,” to which Burmeister agrees, “Got to get it in.”

[4] Id.



[5]

20. From the above video, Burmeister is showing using Launch Control to send out text messages:



[6]

21. Launch Control operates a text message marketing platform for real estate investors:

---

[5] https://www.youtube.com/watch?v=sl_8EHSBLlM – 10 minutes, 12 seconds
[6] Id.



[7]

22. The text messages that Better Future Property sends out to consumers and land owners are solicitations.

23. According to Land Insights, a land investor like Better Future Property will typically offer to purchase a property for between 40 – 60% of its value in order to generate a profit:

[7] https://launchcontrol.us/



[8]

24. As per the above image, the price that is offered to a land owner/consumer also accounts for realtor commissions and closing costs.

25. This means that a land offer from Better Future Property will be at least half the value of the land.

26. When a consumer sells land to a company like Better Future Property, they are receiving a depreciated cash offer which accounts for Defendant's profit and costs, meaning that the consumer is incurring a financial cost by doing business with Better Future Property through that depreciated land value.

27. In comparison, a consumer can sell their land through a realtor for the full value of the land, minus realtor and closing costs, which would net a much larger profit for the consumer than they would receive through a cash offer from Better Future Property.

[8] https://www.landinsights.co/ – Based on the Offer and Profit calculator

28. In response to these text messages, Plaintiff Sawyers brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and NCTSA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF SAWYERS' ALLEGATIONS

29. Plaintiff Sawyers is the sole owner and exclusive user of her cell phone number ending in 0129.

30. Plaintiff Sawyers' cell phone number begins with a 336 North Carolina area code.

31. Plaintiff Sawyers is a resident of North Carolina and was present in North Carolina during the time she received text messages from Better Future Property.

32. Plaintiff Sawyers registered her cell phone number on the DNC on May 30, 2025.

33. Plaintiff Sawyers uses her cell phone number for personal use only as one would use a landline telephone number in a home.

34. Plaintiff Sawyers uses her cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for her other household needs.

35. Plaintiff Sawyers pays for her cell phone plan. It is not reimbursed by a business.

36. Plaintiff Sawyers has never had her cell phone number associated with a business.

37. This phone number is not used in any business or marketing materials.

38. Plaintiff Sawyers has never listed her cell phone number publicly as a business contact number.

39. On July 21, 2025 at 2:41 PM, Plaintiff Sawyers received an unsolicited text message to her cell phone from 336-330-1344:




40. The text message clearly states that it was sent by Sage from Better Future Property.

41. The text message is addressed to Lisa, who Plaintiff believes is the previous owner of her cell phone number.

42. Plaintiff Sawyers does not know Lisa personally.

43. On August 10, 2025 at 6:33 PM, Plaintiff Sawyers received a 2nd unsolicited text message to her cell phone from 336-203-4085:



44. When 336-203-4085 is dialed and not answered, the resulting voicemail states the name Sage Burmeister from Better Future Property.[9]

45. On September 24, 2025 at 4:54 PM, Plaintiff Sawyers received an unsolicited text message to her cell phone from 704-908-7594:




46. Plaintiff Sawyers received an unsolicited text message from 704-908-7594 prior to registering her phone number on the DNC. The previous message states that it was sent by Sage from Better Future Property, as per the screenshot above.

47. On October 22, 2025 at 5:21 PM, Plaintiff Sawyers received an unsolicited text message to her cell phone from 704-908-7594:

[9] Based on an investigation conducted by Plaintiff's attorneys.




48. On November 5, 2025 at 4:38 PM, Plaintiff Sawyers received an unsolicited text message to her cell phone from 704-908-7594:




49. On November 19, 2025 at 4:49 PM, Plaintiff Sawyers received an unsolicited text message to her cell phone from 704-908-7594:



50. Plaintiff Sawyers has never done business with Better Future Property or consented to be contacted by them.

51. The unauthorized solicitation text messages that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Sawyers in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

52. Seeking redress for these injuries, Plaintiff Sawyers, on behalf of herself and Classes of similarly situated individuals, brings suit under the TCPA and North Carolina Telephone Solicitations Act.

## CLASS ALLEGATIONS

53. Plaintiff Sawyers brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Better Future Property texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.
>
> **North Carolina Telephone Solicitations Class:** All persons in North Carolina who from four years prior to the filing of this action through class certification (1) Defendant Better Future Property sent a text message to their phone number that is registered on the Do Not Call Registry (2) where the text was sent for the purpose of soliciting the purchase of real estate property (3) for whom Better Future Property has no record of prior express invitation or permission, or an existing business relationship.

54. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the

Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Sawyers anticipates the need to amend the Class definitions following appropriate discovery.

55. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

56. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) whether Defendant Better Future Property placed multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call and/or text message;

(b) whether the text messages constitute a violation of the TCPA;

(c) whether the text messages constitute a violation of the NCTSA;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

57. **Adequate Representation**: Plaintiff Sawyers will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Sawyers has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Sawyers and her counsel are committed to

vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Sawyers nor her counsel have any interest adverse to the Classes.

58. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to Plaintiff Sawyers. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Sawyers and the Do Not Call Registry Class)**

59. Plaintiff repeats and realleges paragraphs 1-58 of this Complaint and incorporates them by reference herein.

60. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

61. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

62. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Sawyers and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

63. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Sawyers and the Do Not Call Registry Class received more than one text message in a 12-month period sent by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

64. As a result of Defendant's conduct as alleged herein, Plaintiff Sawyers and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

65. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

<u>**SECOND CAUSE OF ACTION**</u>

**North Carolina Telephone Solicitations Act**
**(Violation of N.C. Gen. Stat. §§ 75-101 et seq.)**
**(On Behalf of Plaintiff Sawyers and the North Carolina Telephone Solicitations Class)**

66. Plaintiff repeats and realleges paragraphs 1-58 of this Complaint and incorporates them by reference herein.

67. The North Carolina Telephone Solicitations Act makes it unlawful for any person or entity to initiate a telephone solicitation to the telephone line of any subscriber who has registered the number on the National Do Not Call registry.

68. As per N.C. Gen. Stat. § 75-101(9), "Telephone solicitation" means a voice or text communication, whether prerecorded, live, or a facsimile, over a telephone line or wireless telephone network or via a commercial mobile radio service that is made by a telephone solicitor to a telephone subscriber for the purpose of soliciting or encouraging the purchase or rental of, or investment in, property, goods, or services; obtaining or providing information that will or may be used for that purpose; soliciting or encouraging a telephone subscriber's participation in any contest, sweepstakes, raffle, or lottery, whether legal or illegal; or obtaining a charitable donation. "Telephone solicitation" also includes those transactions that are defined as "telemarketing" under the Telemarketing Sales Rule."

69. Defendant violated N.C. Gen. Stat. §§ 75-101 et seq. by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Sawyers and the North Carolina Telephone Solicitations Class members who received text messages despite having their phone numbers registered on the DNC for at least 30 days prior to the first text message.

70. As a result of Defendant's conduct as alleged herein, Plaintiff Sawyers and the NCTSA Class suffered actual damages and, under Stat. §§ 75-105 (b) are entitled to receive up to $500 in damages for the first violation, and $1,000 foe each subsequent violation.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and the NCTSA;

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Sawyers requests a jury trial.

**LAKEN SAWYERS**, individually and on behalf of all others similarly situated,

DATED this 16th day of December, 2025.

By: /s/ *Ryan Duffy*
The Law Office of Ryan P. Duffy, PLLC
96 E. Catawba Street, Suite 6
Belmont, North Carolina 28012
ryan@ryanpduffy.com
Telephone: (704) 741-9399

*Local Counsel for Plaintiff and the putative Classes*

Avi R. Kaufman*
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the putative Classes*

**Pro Hac Vice motion forthcoming*